IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KARYN JOHNSON, aka KITTY/MILLI, an individual, | § § § § § | |
| Plaintiff, | § § | |
| vs. | § | CIVIL ACTION NO. 4:20-CV-00663 |
| HOUSTON KP, LLC D/B/A POLEKATZ HOUSTON F/K/A SCORES; HOUSTON KP MANAGER, LLC; SANAD IBRAHIM; ANTHONY QUARANTA, MIKE DOE AND EDDIE DOE, individuals, | § § § § § § § § | |
| Defendants. | § | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants Houston KP, LLC d/b/a Polekatz Houston f/k/a Scores, Houston KP Manager, LLC, Sanad Ibrahim, and Anthony Quaranta (collectively, "Defendants"), file this Response to Plaintiffs' Motion for Partial Summary Judgment and request this Court deny Plaintiffs' motion on the basis that there remains a genuine issue of material fact. In support thereof, pursuant to the Federal Rules of Civil Procedure, Defendants would show this Honorable Court as follows:

### INTRODUCTION & PROCEDURAL BACKGROUND

This case is a FLSA action case wherein Plaintiffs allege they were misclassified as independent contractors by Defendants.

Plaintiff Karyn Johnson ("Johnson") filed the suit against Defendants on February 25, 2020. [Dkt. 1].

Plaintiffs Lorenza Lombana ("Lombana") joined this action by filing her consent to

join on July 9, 2020 [Dkt. 17] and Danielle Gutierrez ("Gutierrez") joined this action by filing her consent to join on August 13, 2020 [Dkt. 18]. Plaintiffs filed their Motion for Leave to file Plaintiffs' First Amended Complaint on December 16, 2020 [Dkt. 22], which was granted by the Court on December 24, 2020 [Dkt. 24].

Plaintiff Lombana and Defendants entered into a settlement agreement and Defendants filed Defendants' Second Offer of Judgment to Plaintiff Lombana on June 15, 2021 [Dkt. 32]. The Parties are awaiting this Court to enter judgment on Defendants' Second Offer of Judgment to Plaintiff Lombana.

On July 1, 2021, Plaintiffs filed their Motion for Extension of Time Deadlines [Dkt. 33], which this Court granted on July 26, 2021 [Dkt. 41]. The Court's Order extended the discovery deadline and the pre-trial motions deadline to August 31, 2021.

On August 16, 2021, this Court granted Plaintiffs' Motion for Issuance of Notice Pursuant to Section 216(b) of the FLSA. Defendants sent Plaintiffs the required list of individuals fitting the description of possible plaintiffs on August 24, 2021 in compliance with the Court's Order.

Although the discovery deadline passed as of August 31, 2021, the deposition of a third-party fact witness, Carolyn Vinet, is scheduled to be completed on September 15, 2021. Defendants disclosed and designated Ms. Vinet as a third-party witness on August 9, 2021.

Defendants now file their Response to Plaintiffs' Motion for Partial Summary Judgment, which was filed on August 31, 2021 [Dkt. 43], and ask the Court to deny Plaintiffs' motion on the basis of there being genuine issues of material facts.

## **SUMMARY JUDGMENT EVIDENCE**

**Exhibit A -** Excerpts from the Transcript of the Oral Deposition of Mike Mustafa

**Exhibit B -** Excerpts from the Transcript of the Oral Deposition of Sanad Ibrahim

**Exhibit C -** Excerpts from the Transcript of the Oral Deposition of Danielle Gutierrez

**Exhibit D -** Excerpts from the Transcript of the Oral Deposition of Lorenza Lombana

**Exhibit E -** Entertainer Application

**Exhibit F -** Plaintiff Gutierrez's Responses to Defendant Houston KP, LLC's First Set of Interrogatories

**Exhibit G -** Plaintiff Lombana's Responses to Defendant Houston KP, LLC's First Set of Interrogatories

**Exhibit H -** Excerpts from the Transcript of the Oral Deposition of Anthony Quaranta

**Exhibit I -** Affidavit of Anthony Quaranta

## ARGUMENT & AUTHORITIES

**I. LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.* The moving party bears the initial burden of identifying those portions of the record demonstrating the lack of a genuinely disputed issue of material fact. *Celtox Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant does so, then the burden shifts to the nonmoving part to demonstrate that there are, in fact, genuine factual disputes that preclude judgment as matter of law. *Porter v. Ray,* 461 F.3d 1315, 1320 (11th Cir. 2006).

To satisfy its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must go beyond the pleadings and "identify affirmative evidence" that creates a genuine dispute of material fact. *Crawford-El v. Britton,* 523 U.S. 574, 600 (1998). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. *Hill v. Behrens*, CIV. H-04-CV-3601, 2005 WL 2850298, at *3 (S.D. Tex. Oct. 31, 2005) (quoting Brown, 337 F.3d at 541; Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994).) Disputes about material facts are genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Conclusory claims, unsubstantiated assertions, or insufficient evidence will not satisfy the nonmovant's burden. *Id.* at 2511.

In determining whether a genuine dispute of material fact exists, the Court must view the evidence and draw all factual inferences therefrom in a light *most favorable to the nonmoving party* and must resolve *any reasonable doubts in the nonmoving party's favor.* *Skop v. City of Atlanta,* 485 F.3d 1130, 1136 (11th Cir. 2007) (emphasis added). Summary judgment should only be granted "[w]here the record taken as whole could not lead a rational trier to fact to find for the non-moving party[.]" *Matsushita,* 475 U.S. at 587. "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).

Plaintiffs cannot meet their burden of demonstrating the lack of a genuinely disputed

issue of material fact. Based on the evidence, it is clear that there still remains genuine issue of material facts, and therefore, this issue should not be decided by summary judgment.

**II. SUMMARY JUDGMENT ON PLAINTIFFS' EMPLOYEE VS. INDEPENDENT CONTRACTOR STATUS IS INAPPROPRIATE**

Defendants dispute Plaintiffs' allegations that Plaintiffs and other dancers at Polekatz were misclassified as independent contractors while working for Defendants at Polekatz ("The Club" and/or "Polekatz").

Independent contractors are exempt from FLSA's overtime requirement. Fair Labor Standards Act of 1938 § 7, 29 U.S.C.A. § 207(a)(1).

To determine whether a individual should be classified as an employee or an independent contractor, the Fifth Circuit has adopted the "economic reality" test. Five non-exhaustive factors guide the inquiry, and no one factor is determinative: "(1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship." *Id.*; *See also Reich v. Circle C. Invs., Inc.,* 998 F.2d 324, 327 (5th Cir. 1993). A sixth factor that Courts weigh is whether the worker's services are integral to the business. *Hobbs v. Petroplex Pipe & Constr., Inc.,* 946 F.3d 824, 836 (5th Cir. 2020).

No single factor used when determining whether a worker is an employee for purposes of protection under FLSA is determinative. Fair Labor Standards Act of 1938 § 7, 29 U.S.C.A. § 207(a)(1). Using the six-factor economic reality test, this Court recently

held in *Nelson v. Texas Sugars, Inc.* that the evidence in the exotic dancers' action against the club Texas Sugars alleging violations of the Fair Labor Standards Act for failure to pay minimum and overtime wages was sufficient to support a jury finding that the dancers were not employees. *Nelson v. Texas Sugars, Inc.,* 838 Fed. Appx. 39 (2020).

### III. FACTOR ONE: THE DEGREE OF CONTROL EXERCISED BY THE ALLEGED EMPLOYER

In *Reich*, the Fifth Circuit considered the first factor and found "employee status" when a nightclub exercised a great degree of control over its dancer. *Reich v. Circle C. Invs., Inc.,* 998 F.2d 324, 327 (5th Cir. 1993). The dancers were required to comply with weekly work schedules and fined for absences and tardiness. *Id.* The costumes the dancers wore had to meet specific standards established by the nightclub to promote a certain kind of atmosphere. *Id.* Further, the dancers did not have a say in the type of music played, were expected to mingle with customers when not dancing, and were forced to follow a series of other rules promoted by the nightclub regarding their behavior (e.g., platform heels, no more than fifteen minutes at a time in the dressing room, all dancers "on the floor" at opening time). *Id.*

In opposition to *Reich,* the Fifth Circuit in *Herman v. Express Sixty-Minutes Delivery Service,* found "independent contractor status" when a courier company exerted minimal control over its drivers. 161 F.3d 299, 303 (5th Cir. 1998). The drivers were allowed to set their own work schedules and to reject deliveries without retaliation. *Id.* The drivers were not required to wear a uniform and the drivers were allowed to work for other courier delivery companies, and their independent contractor agreement did not contain a covenant-not-to-compete. *Id.* To clarify its decision, the Fifth Circuit contrasted the company's employee drivers, unlike the independent contractor drivers, (1) reported to

work at a specific time, (2) worked a set number of hours that were determined by the company, (3) were paid by the hour, (4) were required to wear a uniform, (5) were not allowed to turn down deliveries, and (6) were under the constant control and supervision of the courier company. *Id.*

Here, fact issues exist concerning the level of control that Defendants exerted over Plaintiffs. Plaintiffs argue that Defendant exercised a substantial level of control over the dancers. *See* Plaintiffs' Motion for Partial Summary Judgment. However, the record contains evidence that contradicts Plaintiffs' argument.

First, Plaintiffs claim Defendants controlled Plaintiffs work schedule by requiring Dancers to work only during the time the club is open. *Id.* It is a stretch for Plaintiffs to make the argument that the dancers are employees because the dancers are unable to work at Polekatz when Polekatz itself is not open to the public. The depositions of Mike Mustafa, Sanad Ibrahim, and Plaintiff Gutierrez demonstrate that the dancers have no set schedule that they are required to adhere to and that the dancers make their own work schedule. *See* Oral Deposition of Mike Mustafa, attached as Exhibit A, at 52: 17-25; *see also* Oral Deposition of Sanad Ibrahim, attached as Exhibit B, at 62: 16-25, 63: 1; *see also* Oral Deposition of Danielle Gutierrez, attached as Exhibit C, at 38: 21-24, 39: 1-11. The fact that the dancers are able to come and go as they please as well as make their own schedule is contrary to the *Reich* case where dancers were required to be on the floor at opening. *Reich*, 998 F.2d at 327. Plaintiffs Gutierrez and Lombana also admitted during their depositions that while working as dancers at Polekatz, they were not required to work for a minimum number of hours per week. *See* Oral Deposition of Danielle Gutierrez, at 65: 25, 66: 1-2; *see also* Oral Deposition of Lorenza Lombana, attached as Exhibit D, at

24: 18-20. Defendant Sanad testified that although Defendants require the dancers to check-out before they leave, this is not in any way recorded, and is instead used to make sure the stage rotation list is updated as well as for the safety of the dancers. *See* Oral Deposition of Sanad Ibrahim, at 65: 17-25, 66: 1-25, 67: 1-25, 68: 1-4. Mike Mustafa also testified that the purpose of having the dancers notify management that they are leaving is for the safety and security of the dancers. *See* Oral Deposition of Mike Mustafa, at 42: 7-16, 52: 6-12. The dancers are also able to come and go as they please and do not face any sort of repercussions by doing so. *See* Oral Deposition of Sanad Ibrahim, at 62: 16-25, 63: 1; *see also* Oral Deposition of Mike Mustafa, at 52: 17-25, 41: 2-6; *see also See also* Entertainer Application, attached as Exhibit E, at pgs. 1 and 3.

Plaintiffs make a point in ¶ 38 of their Motion that Defendants exercise significant control over Polekatz dancers because Defendants have the authority to terminate or fire dancers. *See* Plaintiffs' Motion for Partial Summary Judgment. However, Plaintiffs then go on to say in ¶ 53 of their Motion that dancers can work at the club until they themselves decide to no longer do so. *See* Plaintiffs' Motion for Partial Summary Judgment Therefore, Plaintiffs contradict their own contention that Defendants control the dancers ability to work at Polekatz by firing them, by stating the dancers also have control over whether or not they continue to work at Polekatz.

Second, unlike the dancers in *Reich* who were required to meet specific standards to fit the club's atmosphere, the dancers at Defendants' were able to choose their wardrobe, as long as it including the undergarments that are required by City Ordinance. *See* Oral Deposition of Mike Mustafa, at 52: 14-16; *see also* Oral Deposition of Danielle Gutierrez, at 44: 12-21; *see also* Oral Deposition of Sanad Ibrahim, at 57: 22-25, 58: 15.

Defendant Ibrahim also testified that the workers that are employees at Defendants' club are required to wear uniform. *See* Oral Deposition of Sanad Ibrahim, at 64: 23-25, 65: 1-2.

Third, like the independent couriers in *Herman,* the dancers were able to choose which customers to dance for. *See* Plaintiff Gutierrez's Responses to Defendant Houston KP, LLC's First Set of Interrogatories, attached as Exhibit F; *see also* Plaintiff Lombana's Responses to Defendant Houston KP, LLC's First Set of Interrogatories, attached as Exhibit G. Not only did dancers have the ability and the control over what customers they danced for, they could also charge over the club's bottom line for private dances. *See* Oral Deposition of Anthony Quaranta, attached as Exhibit H, at 49: 3-13; *see also* Entertainer Application, at pg. 2.

Fourth, although Plaintiffs claim Defendants had significant control over the music played for the stage rotations, there is evidence that contradicts this. Mike Mustafa testified that the dancers could request the DJ to play a certain song while they were on stage. *See* Oral Deposition of Mike Mustafa, at 20: 12-15. Contrary to Plaintiffs' claims that the dancers are forced and required to participate in the stage rotation, Mike Mustafa testified that the dancers can opt out of the stage rotation, without being fined or reprimanded, if they so choose. *See* Oral Deposition of Mike Mustafa, at 41: 2-9.

Fifth, Plaintiffs argue in their Motion for Partial Summary Judgment that the dancers are subject to a significant amount of control by Defendants because it was "expected and customary for them to tip Polekatz employees, such as the DJ and house mom." However, the depositions of Mike Mustafa and Sanad Ibrahim undermine that argument. Mike Mustafa and Sanad Ibrahim both testified that there are no "tip-out rules" and the tipping of any Polekatz employees by the dancers is completely voluntary and not a requirement

set by the club. *See* Oral Deposition of Mike Mustafa, at 41: 7-11; *see also* Oral Deposition of Sanad Ibrahim, at 77: 5-16; *see also* Entertainer Application at pg. 9.

Sixth, Plaintiffs argue that because a dancer at Polekatz must pay the required house fee in order to dance there, the Defendants exert a significant amount of control over the dancers. However, Sanad Ibrahim and Mike Mustafa testified that if a dancer could not afford to pay the house fee, managers did their best to work with the dancers and would still allow them to work, even if they could not afford the house fee. *See* Oral Deposition of Mike Mustafa, at 36: 20-25, 37: 1-2; *see also* Oral Deposition of Sanad Ibrahim, at 48: 24-25, 49: 1-5. Sanad Ibrahim testified that on multiple occasions, he allowed Plaintiff Johnson to opt out of paying the house fee. *See* Oral Deposition of Sanad Ibrahim, at 78: 3-25, 79: 1-2.

Finally, dancers are able to hold other jobs at the same time they work at Defendants', including other Gentlemen's Clubs. The Plaintiffs' and other dancers' ability to work whenever they want as well as wherever they want, including other competing gentlemen's clubs, undercuts Plaintiffs' arguments that Defendants exert a significant degree of control over Plaintiffs' profit or loss. As evidenced by the Entertainer Application and Anthony Quaranta's affidavit, the dancers are put on notice and aware of the fact that they are allowed to hold other jobs, including dancing at other gentlemen's clubs, even if those other places are out of town or at other competing gentlemen's clubs around Houston. *See* Entertainer Application, at pg. 1; *see also* Affidavit of Anthony Quaranta, attached as Exhibit I.

Based on the foregoing reasons, there are fact issues that exist regarding the degree of control that Defendants exerted of Plaintiffs.

### IV. FACTOR TWO: THE EXTENT OF THE RELATIVE INVESTMENTS OF THE WORKER AND THE ALLEGED EMPLOYER

Defendants ask the Court to consider the dancers' return on investment. With many dancers earning $50-$500 a night on weekdays and $500-$1,000 a night on weekends, the return on investment for each dancer who spends a couple of hundred dollars on hair, makeup, nails, costume, etc. is far greater than the Defendants' return on investment.

### V. FACTOR THREE: DEGREE TO WHICH THE WORKER'S OPPORTUNITY FOR PROFIT OR LOSS IS DETERMINED BY THE ALLEGED EMPLOYER

A fact issue exists regarding the degree to which Defendants determined Plaintiffs' opportunity for profit and loss. Plaintiffs claim Defendants controlled the club's customers, by permitted who could be present, the club's location, operating hours, Defendants setting the dance prices, and the advertising for Polekatz are all reasons for the third factor to weigh in favor of employee status. In *Reich*, the Fifth Circuit considered this third factor and found employee status when a nightclub exercised a great degree of control over its dancers' opportunity for profit. 998 F.2d at 328. While the Fifth Circuit recognized that, once customers arrived at the nightclub, a dancer's "initiative, hustle, and costume" contributed a considerable amount in regards to the tips she received, it found that the nightclub had a "significant role in drawing customers to its location." *Id.* However, the Court in *Hickey* considered the third factor and found independent contractor status when a gas-product salesman's profit depended on his ability to increase customer volume through initiative and skill. *Hickey v. Arkla Industries, Inc.,* 699 F.2d 748, 752 (5th Cir. 1983). The Court concluded that these "determinants of customer volume, initiative and skill, were far more vital than those of price and territory." *Id.* The Fifth Circuit also noted that the salesman could sell competitors' products. *Id.* at 750.

Here, a fact issue exists regarding the degree to which Defendants determined Plaintiffs' opportunity for profit and loss. Plaintiffs claim that Defendants exercise a great degree of control over dancers' opportunity for profit and loss because Defendants are responsible for the club's advertisement, business hours, location, maintenance of facilities, aesthetics, and the types of drinks served. *See* Plaintiffs' Motion for Partial Summary Judgment.

However, according to the depositions of Sanad Ibrahim and Mike Mustafa, the dancers are able to come and go as they please and work whenever they want. *See* Oral Deposition of Mike Mustafa, at 41: 2-6. 52: 17-25; *see also* Oral Deposition of Sanad Ibrahim, at 62: 16-25, 63: 1; *see also* Entertainer Application, at pgs. 1 and 3. The Plaintiffs' and other dancers' ability to work whenever they want as well as wherever they want, including other competing gentlemen's clubs undercuts Plaintiffs' arguments that Defendants exert a significant degree of control over Plaintiffs' profit or loss. As evidenced by the Entertainer Application and Anthony Quaranta's affidavit, the dancers are put on notice and aware of the fact that they are allowed to hold other jobs, including dancing at other gentlemen's clubs, even if those other places are out of town or at other competing gentlemen's clubs around Houston. *See* Entertainer Application, at pg. 1; *see also* Affidavit of Anthony Quaranta.

Further, Plaintiffs' argument that because the Defendants controlled the advertising for Polekatz, the dancers should be classified as employees is undermined by the fact that the dancers were allowed to advertise their own services at not only Polekatz, but also other gentlemen's clubs if they worked there, on their own social media platforms or any other way they saw fit. See Oral Deposition of Mike Mustafa, at 24: 2-23; *see also*

Entertainer Application, at pg. 1. Mike Mustafa also testified that Polekatz could not and did not use the dancers' pictures for advertisements unless the dancer signed a consent form. *See* Oral Deposition of Mike Mustafa, at 24: 2-23. Therefore, the dancers had control over whether Defendants used their picture for advertising as well as what advertising the dancers did on their own in order to bring more customers to Polekatz for their services, which in turn results in more profit for the dancers.

Additionally, according to Mr. Quaranta's affidavit, the determinants of costumer volume are mainly controlled by the dancers themselves. Based on Mr. Quaranta, even though the club is responsible for the location, some of the advertising, payment of rent, and the maintenance of the facilities, a dancer's opportunity for profit and loss is determined primarily by her physical appearance. *See* Affidavit of Anthony Quaranta.

Lastly, the dancers are able to charge above what The Club's minimum rate is when it comes to lap dances. *See* Oral Deposition of Anthony Quaranta, at 49: 3-13. The dancers' ability to charge above the minimum price enables the dancers to negotiate prices and have control over their own profit and loss.

Therefore, the Court should find that fact issues exists regarding the degree to which Defendants determined Plaintiffs' opportunity for profit and loss.

## VI. FACTOR FOUR: SKILL AND INITIATIVE REQUIRED IN PERFORMING THE JOB

The fourth factor also raises fact issues. Plaintiffs argue that the skill and initiative factor weighs in favor of employee status because there are no special skills or requirements to dance at Polekatz. *See* Plaintiffs' Motion for Partial Summary Judgment. However, there is evidence on the record that contradicts this argument.

Although most dancers who perform at Defendants' club have no formal training,

many have significant experience in the gentlemen's club business and perform outstanding routines on the stage. *See* Affidavit of Anthony Quaranta. The dancers' need to actually show up to perform and make money is the most obvious initiative required to succeed in any business, including the gentlemen's club business. Because the dancers are able to pick which customers to dance for, as well as turn down customers on their own, a dancers' initiative in doing so is highly important to the skill and initiative involved. Although the club sets the minimum amount for a lap dance, the dancers are able to, and do, charge above that price in order to make more money. *See* Oral Deposition of Anthony Quaranta, at 49: 3-13; *see also* Affidavit of Anthony Quaranta.

Therefore, the Court should find that fact issues exist regarding the skill and initiative required in performing the job.

## VII. FACTOR FIVE: DEGREE OF PERMANENCY OF THE RELATIONSHIP

Here, a fact issue exists concerning the degree of permanency of the relationship between Plaintiffs/dancers and Defendants. Plaintiffs argue that this factor weighs in favor of employee status because "none of the Plaintiffs' work relationships with Defendants was restricted to any set period but, rather, could go on indefinitely." *See* Plaintiffs' Motion for Partial Summary Judgment, at ¶ 53. However, the record contains evidence that undercuts and contradicts Plaintiffs' argument.

In *Reich,* the Fifth Circuit considered this factor and found that the "impermanent relationship" between a group of dancers and a night club reflected "independent contractor status." 998 F.2d at 328. Most dancers had short-term relationships with the nightclub. *Id.* Further, the dancers were allowed to move from nightclub to nightclub. *Id.*

The first fact issues that pertains to the fifth factor is the relationship between

Plaintiffs/Dancers at Polekatz and Defendants was not permanent to any degree. As Plaintiff Gutierrez stated in her deposition that she did not have to give notice that she was quitting or done working and Defendants' club, and just "never showed back up". *See* Oral Deposition of Danielle Gutierrez at 28: 24-25, 29: 1-3. The lack of permanency in the relationship is also demonstrated by the time period that Plaintiffs Gutierrez and Lombana worked at Defendants'. Plaintiff Gutierrez only worked there from January 1, 2020 until March, 2020, which is only a maximum of 3 months. *See* Oral Deposition of Danielle Gutierrez at 14: 4-7, 29: 4-20. Plaintiff Lombana only worked there from early June 2017 until August 2017, which is "under 90 days". *See* Oral Deposition of Lorenza Lombana, at 15: 25, 16: 1-12. Plaintiffs own Motion for Summary Judgment states that the relationship between the dancers and Defendants could end when the dancer herself decided she no longer wanted to work there. *See* Plaintiffs' Motion for Partial Summary Judgment, at ¶ 53. That seems to contrast a "permanent relationship" between the dancers/Plaintiffs and Defendants.

Second, the dancers are able to work whenever they want and wherever they want without consequences. *See* Oral Deposition of Mike Mustafa, at 52: 17-25; *see also* Entertainer Application, at pgs. 1 and 3. Defendants testimony also shows that dancers at Polekatz are not required to work for any set amount of time per day, week, month, or year, where some dancers even show up for ten minutes and then choose to leave on their own. *See* Oral Deposition of Mike Mustafa, at 52: 17-25.

Based on the foregoing reasons, there are fact issues that exist regarding the degree of permanency of the relationship between Plaintiffs/the dancers and Defendants.

### VIII. Factor Six: Services Rendered Being Integral to the Business

Other circuits, such as the Sixth and Tenth Circuits, include this consideration as an enumerated sixth factor in the economic realities test. *Hobbs v. Petroplex Pipe & Constr., Inc.*, 946 F.3d 824, 836 (5th Cir. 2020). Polekatz is able to make a majority of its profits based on advertisements for "specials" such as previewing fight nights at the club, rather than advertising the dancers. *See* Oral Deposition of Mike Mustafa*,* at 23: 14-25; *see also* Oral Deposition of Anthony Quaranta, at 27: 17-25, 28: 1-5. With such advertisements, customers tend to come to the "specials" nights due to the advertisement of a sporting event rather than the fact that there are adult entertainers. *See* Oral Deposition of Mike Mustafa*,* at 23: 14-25. Therefore, there is a fact issue remaining regarding how integral the services being rendered at to the business, and as such, Plaintiffs' Motion for Partial Summary Judgment should be denied.

## **CONCLUSION**

As evidenced by the above factors, there remains genuine issues of material fact that exist as to whether Plaintiffs were Defendants' employees within the meaning of the FLSA. Therefore, Plaintiffs' Motion for Partial Summary Judgment should be denied because Plaintiffs have not been able to meet their burden by identifying those portions of the record demonstrating the lack of a genuinely disputed issue of material fact.

## **PRAYER**

WHEREFORE, Defendants pray the Court deny Plaintiffs' Motion for Partial Summary Judgment, as well as all other relief, at law or in equity, to which they may be justly entitled.

Respectfully submitted,

/s/ Albert T. Van Huff
ALBERT T. VAN HUFF
Monshaugen & Van Huff, P.C.
TX SBN: 24028183
S.D. Texas No.: 26968
ANNA C. HANNA
TX SBN: 24110531
S.D. Texas No.: 3384752
1225 North Loop West, Suite 640
Houston, Texas 77008
Telephone: (713) 880-2992
Facsimile: (713) 880-5297
al@vanhuff.com
ahanna@vanhuff.com

ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

    This is to certify that on September 20, 2021 a true and correct copy of the foregoing document has been served upon the following parties pursuant to Rule 5 of the Federal Rules of Civil Procedure:

Jarrett L. Ellzey, Jr.
HUGHES ELLZEY, LLP
1105 Milford Street
Houston, TX 77006
(713) 332-6387
email: jarrett@hughesellzey.com

Attorney for Plaintiff

William Craft Hughes
HUGHES ELLZEY, LLP
1105 Milford Street
Houston, TX 77006
(713) 332-6387
email: craft@hughesellzey.com

Attorney for Plaintiff

Leigh S. Montgomery
HUGHES ELLZEY, LLP
1105 Milford Street
Houston, TX 77006
(713) 332-6387
email: leigh@hughesellzey.com

Attorney for Plaintiff

Jessenia A. Martinez (pro hac vice)
KRISTENSEN, LLP
12540 Beatrice St., Suite 200
Los Angeles, CA 90066
Phone: (310) 507-7924
Fax: (310) 507-7906
email: jesenia@kristensenlaw.com

Attorney for Plaintiff

                                            /s/ Albert T. Van Huff
                                            Albert T. Van Huff