# ENTERTAINER INFORMATION

Needs SS

here New Hire

**STAGE NAME:** Trinity
**REAL NAME:** Alexis
**PHONE** ▮
**SS#:** ▮
**DATE OF BIRTH** ▮
**EMERGENCY CONTACT:** Kayce 979-717-3173
**EMAIL ADDRESS:** BabyGirl

**PREVIOUS CLUBS:**

1: _____
2: _____
3: _____

IN ORDER TO WORK FRIDAY OR SATURDAY YOU MUST EITHER WORK SUNDAY OR MONDAY. AR

## TO BE FILLED OUT BY MANAGER

**MANAGER ACCEPTING SHEET:** ᴜ
**TODAY'S DATE:** 2-25-19
**HIRED DATE:** 2-25-19
**LAST DATE WORKED:** _____
**BACKGROUND CHECK:**

EXHIBIT
J

# ENTERTAINMENT LEASE

**NOTICE: THIS IS A LEGAL CONTRACT. DO NOT SIGN IT UNLESS YOU FULLY UNDERSTAND AND AGREE TO ALL OF ITS TERMS (AND PLEASE NOTE THAT THIS CONTRACT CONTAINS AN AGREEMENT TO INDIVIDUALLY ARBITRATE CERTAIN DISPUTES AND CLAIMS, WHICH IS FOUND IN PARAGRAPH 21). IF YOU HAVE ANY QUESTIONS, FEEL FREE TO TALK TO THE CLUB'S GENERAL MANAGER. WE SUGGEST THAT BEFORE SIGNING, YOU HAVE THIS CONTRACT REVIEWED BY AN ATTORNEY, ACCOUNTANT, OR OTHER PERSON OF YOUR CHOICE. IN ADDITION, EVEN IF YOU PREVIOUSLY ENTERED INTO SIMILAR CONTRACTS, READ THIS ONE OVER CAREFULLY AS IT COULD BE DIFFERENT FROM THOSE YOU MAY HAVE SIGNED IN THE PAST.**

This Entertainment Lease ("**Lease**") is entered into by the "**Club**" and "**Entertainer**" (the "**Parties**," with each being a "**Party**") to permit **Entertainer** to use certain portions of the "**Premises**." The "**Club**," the "**Entertainer**," and the "**Premises**" are identified on the signature page of this **Lease**.

**PURPOSE OF LEASE:**

The **Club** operates an entertainment facility on the **Premises**. **Entertainer**, who is engaged in the independently established trade and occupation of professional exotic dance entertainers and who runs her own business that provides such entertainment services, and is licensed to do so (if legally required), desires to obtain the right to use certain areas of the **Premises** for her professional activities.

**TERMS OF LEASE:**

**Club** and **Entertainer** agree as follows:

1. **Leasing of Premises/Term.** The **Club** grants to **Entertainer** the right, during normal business hours, to jointly, along with other entertainers, use the stage areas and certain other portions of the **Premises** designated by the **Club** (referred to here as a leasing arrangement, with the **Entertainer** being a tenant/lessee). This **Lease** begins today and ends on the earlier of: A) February 15, 2019; or B) a termination date as provided for in paragraph 18.

2. **Club's Additional Obligations.** The **Club** shall:

   A. Provide, at its own expense, lighting, dressing room facilities, and music for use on the **Premises**, and shall pay all copyright fees due relative to that music; and

   B. Reasonably advertise the business for the benefit of both **Entertainer** and the **Club**. This does not, however, prohibit **Entertainer** from advertising her services in any manner she so desires.

   **Subleasing.** This **Lease** is for **Entertainer**'s personal skills and artistic talent. Consequently, **Entertainer** has no right to sublease or to assign any of her rights or obligations in this **Lease** to any other person without the written consent of the **Club**. However, **Entertainer** has the right to substitute the services of any licensed (if legally required) entertainer who has also entered into an Entertainment Lease with the **Club**.

4. **Non-Exclusivity.** **Entertainer**'s obligations under this **Lease** are non-exclusive. She is free to perform at any other businesses or venues.

5. **Use of Premises.** **Entertainer** agrees to:

   A. Perform, as permitted by law, clothed, semi-nude ("topless") and nude dance entertainment and to perform in stage promotion rotations in order to ensure a continuous entertainment performance;

   B. Obtain, keep in effect, and have in her possession at all times while she is on the **Premises**, any and all required state business registrations, local business and/or occupational licenses and/or permits;

   C. Read, understand, comply with, and not violate, any and all laws that apply to **Entertainer**'s conduct while on the **Premises**, and provide only lawful entertainment services (violations of the law are beyond the scope of authority under, and constitute a breach of, this **Lease**);

   D. Maintain accurate daily records of all income, including tips, earned while performing on the **Premises**, in accordance with all taxation laws; and

   E. Pay for any damages she causes to the **Premises** and/or to any of the **Club**'s personal property.

6. **Compliance with Rules.** The **Club** may impose rules upon the use of the **Premises** by **Entertainer** as the **Club** deems necessary in order to ensure that: A) no damage to the **Club**'s property occurs; B) the **Premises** are used in a safe fashion for the benefit of all entertainers, patrons, employees and others; and C) no violations of the law occur. **Entertainer** agrees to comply with all such rules, as well as with all rules established by a majority vote of entertainers.

7. **Nature of Performance and Costuming.** Other than to ensure compliance with all applicable laws, the **Club** shall have no right to direct or control: The nature, content, character, manner or means of **Entertainer**'s entertainment services or her performances; or the costumes/wearing apparel she selects. **Entertainer** shall have full control over all such matters. **Entertainer** shall supply and exclusively pay for all of her own costumes and wearing apparel (which must comply with all applicable laws and which shall be in accordance with industry standards for professional entertainers performing in upscale, high-end, entertainment facilities), and all of her props or other equipment that she may use during, or as part of, her performances.

Page 1 of 7 (Pole.EL.Rev.02/08/2018)   Date 2-25-19   Initials H / K

8. **Intellectual Property.** Entertainer retains all intellectual property rights to her performances and likeness, unless assigned by her in writing.

9. **Nature of Business.** Entertainer understands: A) That the nature of the **Club's** business is adult entertainment; and B) that she may be subjected to either full or partial nudity (depending upon the law), explicit language, advances by customers, depictions or portrayals of a sexual nature, and to similar types of behavior. **Entertainer** represents that she is not and will not be offended by, and she assumes any and all risks associated with, being subjected to such matters.

10. **Privacy.** Privacy and personal safety are important concerns to **Entertainer.** Accordingly, the **Club** shall not knowingly disclose to any persons who are not associated with the **Club, Entertainer's** legal name, address, email address, or telephone number, except upon written authorization of the **Entertainer** or as required by law.

11. **Entertainment Fees.** In consultation with the entertainers who lease space on the **Premises,** the **Club** shall establish fixed fees as the price for certain personal performances ("**Entertainment Fees**"). **Entertainer** agrees not to charge a customer less than the fixed price for any such performance unless the **Entertainer** notifies the **Club** in writing of any charges to her customers of a lower amount. Nothing in this **Lease,** however, limits **Entertainer** from receiving tips over-and-above the established price for such performances (**Entertainer** is not required to share her tips with anyone else).THE PARTIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT ENTERTAINMENT FEES ARE NEITHER TIPS NOR GRATUITIES, BUT ARE, RATHER, MANDATORY CHARGES TO THE CUSTOMER AS THE PRICE FOR PURCHASING A PERSONAL ENTERTAINMENT PERFORMANCE.

Entertainer understands and acknowledges that **Club** offers gift certificates to its customers, known as **Katz Kash. Entertainer** is under no obligation to accept Katz Kash from a customer. However, if **Entertainer** does so, she understands that **Club** shall charge a ten percent (10%) surcharge when cashing Katz Kash in to **Club.**

12. **Business Relationship of Parties.**

    A. **Entertainer** acknowledges that the **Club** has offered to hire her as an employee, but that she has **REJECTED** that offer and desires, instead, to perform as an Independent Professional Entertainer under the terms of this **Lease.**

    B. The **Parties** acknowledge that the business relationship created between them is that of the joint and non-exclusive leasing of certain parts of the **Premises** (meaning that other entertainers are also leasing parts of the **Premises** at the same time). THE **PARTIES** SPECIFICALLY DISAVOW ANY EMPLOYMENT RELATIONSHIP BETWEEN THEM, and this **Lease** shall not be interpreted as creating an employer/employee relationship or any contract for employment. ENTERTAINER UNDERSTANDS THAT THE **CLUB** WILL NOT PROVIDE TO HER ANY WAGE (WHETHER HOURLY OR OTHERWISE), OVERTIME PAY, EXPENSE REIMBURSEMENT, OR OTHER EMPLOYEE-RELATED BENEFITS.

    C. The **Club** and **Entertainer** acknowledge that if the relationship between them was that of employer and employee, the **Club** would be required to collect, and would retain, all **Entertainment Fees** paid by customers to **Entertainer** – ENTERTAINER SPECIFICALLY ACKNOWLEDGING THAT IN AN EMPLOYER/EMPLOYEE RELATIONSHIP ALL **ENTERTAINMENT FEES** WOULD BE, BOTH CONTRACTUALLY AND AS A MATTER OF LAW, THE PROPERTY OF THE **CLUB** AND NOT THE PROPERTY OF **ENTERTAINER.** ENTERTAINER'S RIGHT TO OBTAIN AND KEEP **ENTERTAINMENT FEES** IS SPECIFICALLY CONTINGENT UPON THE BUSINESS RELATIONSHIP OF THE **PARTIES** BEING THAT OF A LEASING ARRANGEMENT.

Under an employment relationship, **Entertainer** would be paid, in accordance with Section 203(m) of the Fair Labor Standards Act and applicable state law, the legally permitted "tip-credited" wage ($4.95 per hour at the time of the drafting of this **Lease,** and as adjusted by applicable law). The **Club** would then increase **Entertainer's** wages by the amount of tip income she earned and retained, up to the allowable tip credit ($3.30 per hour at the time of the drafting of this **Lease,** and as adjusted by applicable law), which could not exceed the amount of tips actually and ultimately received and retained by the **Entertainer.** If, in a workweek, **Entertainer** did not earn at least the full minimum wage through wages and retained tips, the **Club** would pay **Entertainer** the difference so that she earned the full minimum wage for each hour worked ($8.25 per hour at the time of the drafting of this **Lease,** and as adjusted by applicable law). These "tip credit" provisions would not apply unless **Entertainer** was informed of them; this document serving as such notice. **Entertainer** would further be entitled to retain all tips-**but not Entertainment Fees**- that she may collect (the **Club** would not retain any portion of her tip income), although she would be required to pay 15% of her tips into a "tip pool" that would be distributed to non-dancer regularly tipped employees.

The **Parties** additionally acknowledge that were the relationship between them to be that of employer/employee, **Entertainer's** employment would be "at will" (she could be fired at any time without cause and without prior warning), and the **Club** could control, among other things, **Entertainer's:** Work schedule and hours of work; job responsibilities; physical appearance (such as make-up, hairstyle, etc.); costumes/wearing apparel; music; work habits; the selection of her customers; the nature, content, character, manner and means of her performances; and her ability to perform at

other locations.

**ENTERTAINER** REPRESENTS THAT SHE DESIRES TO BE ABLE TO MAKE ALL OF THESE CHOICES HERSELF, WITHOUT THE CONTROL OF THE **CLUB**, AND THE **PARTIES** AGREE THAT ALL SUCH DECISIONS ARE EXCLUSIVELY RESERVED TO BE MADE BY HER.

**ENTERTAINER** FURTHER REPRESENTS THAT SHE DOES NOT DESIRE TO PERFORM AS AN EMPLOYEE OF THE **CLUB** UNDER THE TERMS OUTLINED ABOVE, BUT, RATHER, DESIRES TO PERFORM AS A TENANT CONSISTENT WITH THE OTHER PROVISIONS OF THIS **LEASE**.

D. If any court, tribunal, arbitrator, or governmental agency determines that the relationship between the **Parties** is one of employment and that **Entertainer** is then entitled to the payment of wages from the **Club**, all of the following shall apply:

   i. In order to comply with applicable tax laws and to assure that the **Club** is not unjustly harmed and that **Entertainer** is not unjustly enriched by the **Parties** having financially operated pursuant to this **Lease**, the **Parties** agree that **Entertainer** shall surrender, reimburse and remit to the **Club**, all **Entertainment Fees** received by her during all periods in which the court, tribunal, arbitrator, or governmental agency finds her to have been the employee of the **Club** (the "**Reclassification Period**") - all of which would otherwise have been collected and kept by the **Club** had they not been retained by **Entertainer** under the terms of this **Lease**;

   ii. **Entertainer** shall immediately remit to the **Club** 15% of all tips that she earned during the **Reclassification Period**, which shall be distributed to non-dancer regularly tipped employees, and shall provide to the **Club** a signed and legally compliant statement of all tip income earned by her during the **Reclassification Period**;

   iii. Any **Entertainment Fees** from the **Reclassification Period** that **Entertainer** does not return to the **Club** shall be deemed service charges paid by the customer and shall be accounted for by the **Club** as such. The **Club** shall then be entitled to a credit against any wages due in the amount of the **Entertainment Fees** retained by **Entertainer**, and such fees shall therefore constitute wages paid from the **Club** to **Entertainer**. In such circumstances, the **Club** shall immediately submit to the IRS and applicable state taxing authorities all necessary filings regarding such income; and

   iv. The relationship of the **Parties** shall immediately convert to an employment arrangement under the terms in subparagraph 12(C) of this **Lease** and the "Employee Status" provisions of the Business Status Selection by Entertainer and Offer of Employment document previously signed by **Entertainer**.

E. If at any time **Entertainer** believes that - - irrespective of the terms of this **Lease** - - she is being treated as an employee by the **Club** or that her relationship with the **Club** is truly that of an employee, **Entertainer** shall immediately, <u>**but in no event later than three business days thereafter**</u>: i) provide notice to the **Club** <u>in writing</u> of her demand to be fully treated as an employee consistent with the terms of subparagraph 12(C) and applicable law; and ii) begin reporting all of her tip income to the **Club** on a daily basis (such tip reporting being legally required of all regularly tipped employees). The **Club** shall then convert **Entertainer** to an employee consistent with the provisions of subparagraph 12(C) of this **Lease** and the "Employee Status" provisions of the Business Status Selection by Entertainer and Offer of Employment document previously signed by **Entertainer**.

F. If at any time during this **Lease**, **Entertainer** desires to convert to being an employee-entertainer, **Entertainer** shall notify the **Club** of her desire <u>in writing</u>, and the **Club** shall thereafter convert her to an employee consistent with the provisions of subparagraph 12(C) of this **Lease** and the "Employee Status" provisions of the Business Status Selection by Entertainer and Offer of Employment document previously signed by **Entertainer**.

G. If at any time **Entertainer** contends that she should not be bound by the terms of this **Lease** and that she is or was entitled to the payment of wages during any period of time that she performed at the **Club**, **Entertainer** shall contemporaneously with making such a demand provide to the **Club** a signed and legally compliant statement of all tip income earned by her during the time she claims to have been entitled to the payment of wages.

**13. Taxes.** **Entertainer** is exclusively responsible for, and shall pay, all applicable taxes and contributions imposed upon any income she earned while performing on the **Premises**.

**14. Scheduling of Performance Dates.** **Entertainer** shall determine the days and times when she desires to lease space on the **Premises** (each such entertainment session being one "**Show Date**").

**15. Rent.** **Entertainer** shall pay rent ("**Rent**") to the **Club** in amounts stated on Exhibit "A" attached to this **Lease**. **Rent** shall be paid immediately upon completion of the **Show Date** for which it is due.

**16. Material Breach by Club.** The **Club** materially breaches this **Lease** by failing to provide to **Entertainer** the leased portions of the **Premises** on any day she schedules, or by willfully violating any law governing the operation of the **Club**. The **Club** shall not be liable for acts of nature or other causes beyond its reasonable control.

17. <u>Material Breach by Entertainer</u>. **Entertainer** materially breaches this **Lease** by failing to maintain any and all required licenses and/or permits; willfully violating any law while on the **Premises**; failing to pay any **Rent** when due; or claiming the business relationship with the **Club** as being other than that of a leasing arrangement.

18. <u>Termination/Breach</u>. Either **Party** may terminate this **Lease**, without cause, upon thirty (30) days' notice. Upon material breach, the non-breaching **Party** may terminate this **Lease** upon twenty-four (24) hours' notice or as otherwise may be provided by law. Nothing in this paragraph, however, shall allow **Entertainer** to perform on the **Premises** without a valid license or permit, if applicable, or to continue to engage in conduct in violation of any laws.

19. <u>Severability</u>. If any provision of this **Lease** is declared to be illegal or unenforceable, this **Lease** shall, to the extent possible, be interpreted as if that provision was not a part of this **Lease**; it being the intent of the **Parties** that such part be, to the extent possible, severable from this **Lease** as a whole. Nevertheless, in the circumstance of a judicial, arbitration, or administrative determination that the business relationship between **Entertainer** and the **Club** is something other than that of a leasing arrangement, the relationship between **Entertainer** and the **Club** shall be governed by the provisions of subparagraphs 12(C) and 12(D) of this **Lease** and the "Employee Status" provisions of the Business Status Selection by Entertainer and Offer of Employment document previously signed by **Entertainer**.

20. <u>Governing Law</u>. This **Lease** shall be interpreted pursuant to the laws of the State of Illinois, except as may be preempted by the Federal Arbitration Act.

21. <u>**MUTUAL AGREEMENT TO ARBITRATE/WAIVER OF CLASS AND COLLECTIVE ACTIONS/ATTORNEY FEES AND COSTS**</u>.

> <u>**NOTE**</u>: PROCEEDINGS IN ADMINISTRATIVE AGENCIES, SUCH AS THE NATIONAL LABOR RELATIONS BOARD, THE DEPARTMENT OF LABOR, AND THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ARE <u>NOT</u> GOVERNED OR BARRED BY THE PROVISIONS IN THIS PARAGRAPH 21. <u>ENTERTAINER MAY FILE ANY CLAIM SHE WANTS WITH ANY ADMINISTRATIVE AGENCY REGARDLESS OF ANYTHING CONTAINED IN THIS PARAGRAPH 21.</u>

IN ORDER TO RESOLVE DISPUTES THAT MAY ARISE OUT OF ENTERTAINER PERFORMING OR HAVING PERFORMED AT THIS CLUB, THE CLUB HAS ESTABLISHED A PRIVATE "ARBITRATION" PROCESS SET OUT IN THIS PARAGRAPH 21. ARBITRATION IS SIMILAR TO A COURT PROCEEDING BUT IT'S LESS FORMAL, LESS TIME-CONSUMING, AND CAN BE LESS EXPENSIVE THAN GOING TO COURT.

THROUGH ARBITRATION, THE PARTIES AGREE TO HAVE DISPUTES THAT CANNOT OR WILL NOT BE DECIDED AND CONCLUDED BY AN ADMINISTRATIVE AGENCY (REFERRED TO IN THIS PARAGRAPH 21 AS "NON-ADMINISTRATIVE" DISPUTES OR CLAIMS) RESOLVED BY AN "ARBITRATOR", INSTEAD OF BY A COURT OR JURY. THE ARBITRATOR IS USUALLY A LAWYER AND IS SOMETIMES A RETIRED JUDGE.

THE PARTIES AGREE THAT ALL NON-ADMINISTRATIVE DISPUTES SHALL BE RESOLVED AND ADMINISTERED AS FOLLOWS:

A. ANY CONTROVERSY, DISPUTE, OR CLAIM ARISING OUT OF, OR RELATING IN ANY WAY TO, THIS LEASE, ITS TERMINATION, ENTERTAINER PERFORMING AND/OR WORKING AT THE CLUB AT ANY TIME, OR THE TERMINATION OF SUCH PERFORMANCES OR WORK (COLLECTIVELY IN THIS PARAGRAPH 21, A "CLAIM" OR "CLAIMS"), SHALL BE RESOLVED EXCLUSIVELY BY <u>BINDING ARBITRATION</u> IN ACCORDANCE WITH THE FEDERAL ARBITRATION ACT (THE "F.A.A.").

THIS REQUIREMENT TO ARBITRATE ANY AND ALL NON-ADMINISTRATIVE CLAIMS APPLIES REGARDLESS OF:

i) WHETHER SUCH A CLAIM IS BASED UPON CONTRACT, COMMON LAW, EQUITY, STATUTE, REGULATION, ORDINANCE, OR OTHERWISE; AND

ii) WHETHER A CLAIM BY ONE PARTY IS ONLY AGAINST THE OTHER PARTY OR IS ALSO, OR IS ALTERNATIVELY, AGAINST PERSONS OR ENTITIES ASSOCIATED IN ANY WAY WITH THE OTHER PARTY, INCLUDING BUT NOT LIMITED TO PREDECESSORS IN INTEREST, SUCCESSORS IN INTEREST, HEIRS, AND ALL PAST, PRESENT, AND FUTURE OWNERS, DIRECTORS, MANAGERS, OFFICERS, EMPLOYEES, CONSULTANTS, LANDLORDS, LICENSORS, AGENTS, LEGAL REPRESENTATIVES, EXECUTORS, ADMINISTRATORS, AND ASSIGNEES; WITH EACH SUCH INDIVIDUAL AND ENTITY ALSO BEING CONSIDERED TO BE A "PARTY" FOR PURPOSES OF THIS PARAGRAPH 21.

THE ARBITRATION PROCEEDING SHALL OCCUR IN THE STATE OF ILLINOIS, AND SHALL BE ADMINISTERED BY AN INDEPENDENT NEUTRAL ARBITRATOR

AGREED UPON BY THE PARTIES, WHO SHALL BE PERMITTED TO AWARD -- SUBJECT ONLY TO THE RESTRICTIONS CONTAINED IN THIS PARAGRAPH 21 -- ANY RELIEF AVAILABLE IN A COURT.

THE PARTIES WAIVE THE RIGHT TO LITIGATE ALL SUCH NON-ADMINISTRATIVE CLAIMS IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY. THESE WAIVERS APPLY TO ALL STATUTORY CLAIMS OF EVERY CONCEIVABLE KIND OR NATURE WHATSOEVER (EXCEPT, AGAIN, TO CLAIMS IN ADMINISTRATIVE AGENCIES WHICH, AS REFERENCED IN THE "NOTE" ABOVE, ARE NOT GOVERNED BY THIS PARAGRAPH 21), INCLUDING BUT NOT LIMITED TO CLAIMS THAT SEEK WAGES AND/OR OTHER EMPLOYMENT BENEFITS, OR THAT ALLEGE HARASSMENT, DISCRIMINATION, OR THE UNLAWFUL PROVIDING OF ALCOHOL ("DRAM SHOP" LIABILITY).

NO DEMAND FOR ARBITRATION MAY BE MADE AFTER THE DATE WHEN THE COMMENCEMENT OF LEGAL OR EQUITABLE PROCEEDINGS BASED ON SUCH A CLAIM WOULD BE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.

SUBJECT ONLY TO THE TERMS OF THE F.A.A. AND THIS PARAGRAPH 21, THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY DISPUTES OVER THE FORMATION, VALIDITY, INTERPRETATION, SCOPE, AND/OR ENFORCEABILITY OF ANY PART OF THIS LEASE, INCLUDING THE ARBITRATION PROVISIONS CONTAINED IN THIS PARAGRAPH 21.

EACH PARTY SHALL INITIALLY BE RESPONSIBLE FOR ITS/THEIR OWN ATTORNEY FEES AND OUT-OF-POCKET COSTS ASSOCIATED WITH THE ARBITRATION PROCEEDING. THE ACTUAL COSTS OF ARBITRATION (THE ARBITRATOR'S FEES AND RELATED EXPENSES) SHALL BE BORNE EQUALLY BY THE ENTERTAINER AND THE CLUB UNLESS APPLICABLE LAW REQUIRES THE ARBITRATOR TO IMPOSE A DIFFERENT ALLOCATION.

EITHER PARTY MAY REQUEST AN ARBITRATOR EXPERIENCED IN THE ADULT ENTERTAINMENT INDUSTRY. THE PROCEEDINGS SHALL BE CONDUCTED IN ACCORDANCE WITH THAT LEVEL OF DUE PROCESS REQUIRED FOR ARBITRATIONS. THE ARBITRATOR'S DECISION (WHICH IS TO BE IN WRITING) SHALL BE FINAL, SUBJECT ONLY TO REVIEW UNDER THE F.A.A. OR AS PROVIDED FOR IN THIS PARAGRAPH 21. ANY AWARD BY THE ARBITRATOR MAY BE ENTERED AS A JUDGMENT IN ANY COURT HAVING JURISDICTION.

B. ENTERTAINER AND THE CLUB AGREE THAT ANY AND ALL NON-ADMINISTRATIVE CLAIMS THAT THEY MAY HAVE AGAINST THE OTHER (AND/OR AGAINST ANY PERSONS OR ENTITIES ASSOCIATED WITH THE OTHER), SHALL BE BROUGHT AND MAINTAINED INDIVIDUALLY BY THAT PARTY IN ARBITRATION; THAT THEY WILL NOT CONSOLIDATE THEIR CLAIMS WITH THOSE OF ANY OTHER PERSON OR ENTITY; THAT THEY WILL NOT SEEK CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION TREATMENT FOR ANY CLAIM; AND THAT THEY WILL NOT PARTICIPATE, IN ORDER TO RESOLVE A CLAIM, IN ANY CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION AGAINST THE OTHER (AND/OR AGAINST PERSONS OR ENTITIES ASSOCIATED WITH THE OTHER).

ACCORDINGLY, THE ARBITRATOR SHALL NOT CONSOLIDATE THE CLAIMS OF MORE THAN ONE PERSON OR ENTITY, AND MAY NOT PRESIDE OVER ANY FORM OF REPRESENTATIVE, CLASS, OR COLLECTIVE PROCEEDINGS. IN THE EVENT AN ACTION IS BROUGHT IN ARBITRATION ON BEHALF OF MULTIPLE INDIVIDUALS AND/OR ENTITIES, THE ARBITRATOR SHALL HAVE ONLY THE AUTHORITY TO DIVIDE THE ACTION INTO INDIVIDUAL PROCEEDINGS; EACH THEN TO BE HEARD BY AN INDIVIDUAL ARBITRATOR.

SHOULD AN ARBITRATOR RULE ON WHETHER A MATTER MAY PROCEED AS A REPRESENTATIVE, CLASS OR COLLECTIVE ARBITRATION (A "SCOPE OF ARBITRATION RULING"), THE ARBITRATOR SHALL IMMEDIATELY STAY ALL PROCEEDINGS FOR A PERIOD OF THIRTY (30) DAYS FOLLOWING SUCH A RULING TO PERMIT ANY PARTY TO MOVE A COURT OF COMPETENT JURISDICTION TO CONFIRM OR VACATE THE SCOPE OF ARBITRATION RULING BY DETERMINING WHETHER THE SCOPE OF ARBITRATION RULING IS IN ACCORDANCE WITH APPLICABLE LAW AND THE TERMS OF THIS PARAGRAPH 21(B). IF, AT THE END OF SUCH 30 DAY PERIOD, NO PARTY HAS MOVED FOR JUDICIAL REVIEW, THE ARBITRATOR SHALL PROCEED WITH THE ARBITRATION. HOWEVER, IF ANY PARTY HAS SOUGHT JUDICIAL REVIEW DURING THAT PERIOD, THE ARBITRATION SHALL BE STAYED UNTIL

THE RULING OF THE COURT AND THE CONCLUSION OF ANY AND ALL APPEALS FROM SUCH RULING.

IN THE EVENT THAT ANY PARTY IS MADE, AT ANY TIME, A MEMBER OF A CLASS IN ANY PROCEEDING BARRED BY THE PROVISIONS OF THIS PARAGRAPH 21(B), THE PARTY AGREES TO "OPT OUT" AT THE FIRST OPPORTUNITY.

C. IF AT ANY TIME THE PROVISIONS OF PARAGRAPH 21(B) THAT REQUIRE CLAIMS ONLY TO BE BROUGHT ON AN INDIVIDUAL BASIS ARE RULED TO BE UNENFORCEABLE, THEN THE ARBITRATION MAY PROCEED AS AN OPT IN COLLECTIVE ACTION GENERALLY UTILIZING THE PROCEDURES ADOPTED UNDER 29 UNITED STATES CODE SECTION 216(b) OF THE FAIR LABOR STANDARDS ACT FOR DETERMINING THE PARTICIPANTS IN SUCH AN ACTION.

UNDER NO CIRCUMSTANCE SHALL AN ARBITRATION PROCEED ON A CLASS ACTION, OPT OUT, BASIS; THE PARTIES SPECIFICALLY INTENDING THAT IF CLASS ACTION PROCEEDINGS ARE DEEMED TO BE LEGALLY REQUIRED FOR ANY CLAIM, THEN THEY AND ALL OTHER RELATED CLAIMS SHALL BE ADMINISTERED BY A COURT OF LAW.

D. SHOULD A PARTY SEEK EMERGENCY RELIEF TO PREVENT OR ABATE ALLEGED IRREPARABLE HARM AND THE PARTIES BE UNABLE TO AGREE TO AN ARBITRATOR WITHIN THREE (3) BUSINESS DAYS, THE PARTIES SHALL JOINTLY PETITION A COURT OF COMPETENT JURISDICTION FOR APPOINTMENT OF A NEUTRAL ARBITRATOR TO PRESIDE OVER THE REQUEST FOR EMERGENCY RELIEF.

E. IN THE EVENT THAT ANY PARTY CHALLENGES, OR IS REQUIRED TO INITIATE PROCEEDINGS TO ENFORCE, THE ARBITRATION REQUIREMENTS OF THIS PARAGRAPH 21, THE PREVAILING PARTY TO SUCH CHALLENGES/ENFORCEMENT PROCEEDINGS SHALL BE ENTITLED TO AN AWARD OF ALL COSTS, INCLUDING REASONABLE ATTORNEY FEES, INCURRED IN LITIGATING SUCH ISSUES.

IN ADDITION, IF A PARTY CHALLENGES, OPPOSES, OR FAILS TO CONSENT TO, THE ENFORCEABILITY OF THE ARBITRATION REQUIREMENTS CONTAINED IN THIS PARAGRAPH 21, ANY PARTY THAT PREVAILS IN OBTAINING ENFORCEMENT OF THESE ARBITRATION PROVISIONS SHALL BE ENTITLED TO AN AWARD OF ALL COSTS, INCLUDING REASONABLE ATTORNEY FEES, INCURRED IN LITIGATING ANY OTHER MATTERS IN A COURT OF LAW THAT WOULD NOT HAVE BEEN NECESSARY HAD THE CLAIM(S) INITIALLY BEEN BROUGHT IN ARBITRATION UNDER THE TERMS OF THIS PARAGRAPH 21.

F. ANY RULING ARISING OUT OF A CLAIM BETWEEN THE PARTIES SHALL, TO THE EXTENT NOT PRECLUDED BY LAW, AWARD COSTS INCURRED FOR THE PROCEEDINGS, INCLUDING REASONABLE ATTORNEY FEES, TO THE PREVAILING PARTY.

G. THE ARBITRATION PROVISIONS OF THIS PARAGRAPH 21 SUPERSEDE ANY PRIOR ARBITRATION AGREEMENT(S) ENTERED INTO BETWEEN THE CLUB AND THE ENTERTAINER.

ALL PORTIONS OF THIS PARAGRAPH 21 SURVIVE EXPIRATION, TERMINATION, AND/OR CANCELLATION OF THIS LEASE.

22. **Superseding Effect.** The execution of this **Lease** shall terminate any similar lease or other similar contract currently in effect between the **Club** and **Entertainer**.

(THIS SPACE INTENTIONALLY LEFT BLANK)

This **Lease** is immediately terminated if **Entertainer** is not of legal age. **Entertainer** specifically represents that she is of lawful age or older, that she has provided appropriate identification verifying her age, and that such identification is valid and authentic.

BY SIGNING THIS DOCUMENT, ENTERTAINER REPRESENTS THAT:

- SHE HAS FULLY READ THIS LEASE PRIOR TO SIGNING IT;

- SHE HAS BEEN PROVIDED A COPY OF THIS LEASE AND HAS HAD OPPORTUNITIES TO BOTH ASK QUESTIONS REGARDING ITS CONTENT AND HAVE IT REVIEWED BY PERSONS OF HER CHOICE, INCLUDING BY ATTORNEYS AND ACCOUNTANTS, BEFORE SHE HAS SIGNED IT; AND

- SHE UNDERSTANDS THE TERMS OF THIS LEASE AND AGREES TO BE BOUND BY THEM.

"CLUB"

Polekatz Gentlemen's Club, LLC

By: _____
   **Anthony Quaranta**
   Its: Owner

Date: January 1, 2019

"ENTERTAINER"

_Alexus K_ [signature]

_____ [printed name]

_Trinity_ [stage name]

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ [if applicable]

"PREMISES"

6340 Westheimer rd
Houston, Texas 77057

Date 2-25-19

# BUSINESS STATUS SELECTION BY ENTERTAINER
# AND OFFER OF EMPLOYMENT

As a result of our review of your application, interview, and audition, the Club would like to offer you the opportunity to perform here. There are different business arrangements under which you can perform, and we want **YOU** to make the decision as to the way that **YOU** want to perform at this Club. You can do so either as: 1) an INDEPENDENT PROFESSIONAL ENTERTAINER; or 2) an EMPLOYEE.

We have listed below some of the general distinctions between performing here as an Independent Professional Entertainer or as an Employee. This document is not intended to provide legal or tax advice, and is merely a summary of general information.

**WE DO NOT, HOWEVER, WANT YOU TO MAKE ANY RASH OR UNINFORMED DECISIONS CONCERNING THE MATTERS SET OUT IN THIS DOCUMENT. YOU ARE ENCOURAGED TO CONSULT WITH ANY PERSONS OF YOUR CHOICE, INCLUDING ATTORNEYS, ACCOUNTANTS AND/OR TAX PROFESSIONALS, PRIOR TO MAKING THIS SELECTION. IN ADDITION, IF YOU WOULD LIKE TO SEE A COPY OF THE CONTRACT THAT THE CLUB USES FOR INDEPENDENT PROFESSIONAL ENTERTAINERS (CALLED AN "ENTERTAINMENT LEASE") PRIOR TO MAKING YOUR DECISION, PLEASE JUST ASK AND WE WILL BE HAPPY TO PROVIDE YOU WITH A COPY TO REVIEW. FEEL FREE TO TAKE THESE DOCUMENTS HOME AND REVIEW THEM AT YOUR LEISURE BEFORE MAKING YOUR CHOICE.**

After reviewing this information, we would like you to select the circumstances under which you want to perform at this Club. The Club management expresses **no opinion** on this matter, and we will be happy to have you perform here under **either** structure. This is **your choice** to make.

The Club will rely upon the selection you have made at the end of this document, and will offer you the opportunity to enter into the business arrangement that **YOU** selected.

Here are the general differences of the two distinct arrangements under which you can perform at this Club:

| INDEPENDENT PROFESSIONAL ENTERTAINER STATUS | VS. | EMPLOYEE STATUS |
|---|---|---|
| 1. As an Independent Professional Entertainer, you will enter into a written contract with the Club which will be for a certain period of time; which will specify in writing the rights, duties and obligations of both you and the Club; and which cannot be changed except upon the mutual agreement of both you and Club management. The Club will not be able to terminate your contract during the specified period except upon the limited reasons identified in the contract. | | 1. As an Employee, you will not have any contract with the Club. Rather, your employment will be "at will," meaning that your employment can be terminated by the Club (or by you) at any time, without cause and without prior notice. The Club will have the right to change the terms of your employment at its discretion at any time. |
| 2. As an Independent Professional Entertainer, all of your earnings will come directly from your customers. YOU WILL NOT RECEIVE ANY PAY FROM THE CLUB, EITHER BY WAY OF AN HOURLY WAGE OR A SALARY. You will charge your customers for your personal entertainment performances ("Entertainment Fees");the money that you receive from them, either by way of Entertainment Fees(discussed in number 4 below) or tips (discussed in number 3 immediately below), will be your money that you will be able to take home at the end of the day. You will, however, be required to pay certain fees to the Club for having the right to perform here. You can review a copy of the contract that the Club uses in order to see the current amount of those fees. If there are any differences between this document and the Entertainment Lease, the terms of the Entertainment Lease control. | | 2. As an Employee, you will be paid semi-monthly on an hourly basis at a rate equal to the current applicable tip-credited minimum wage. Under such an employment relationship, you would be paid, in accordance with Section 203(m) of the Fair Labor Standards Act and applicable state law, the legally permitted "tip-credited" wage ($4.95 per hour at the time of the drafting of this document, and as adjusted by applicable law). The Club would then increase your wages by taking the allowable tip credit allowed ($3.30 per hour at the time of the drafting of this document, and as adjusted by applicable law), which cannot exceed the amount of tips actually received and kept by you. If, in a workweek, you did not earn at the least the full minimum wage through wages and retained tips ($8.25per hour at the time of the drafting of this document, and as adjusted by applicable law), the Club would pay you the difference so that you would earn the full minimum wage for each hour worked. These "tip credit" provisions would not apply unless you were informed of them. |

Page 1 of 4(Polekatz.Rev.02/08/2018)

| As an Independent Professional Entertainer | As an Employee |
|---|---|
| 3. As an Independent Professional Entertainer, all tips that you earn (gratuities paid by customers *over and above* the posted Entertainment Fees, as well as stage tips) are yours to keep. You will not be required to share your tips with, or "tip out" to, anyone. | 3. As an Employee, you would be entitled to retain all tips that you collect(gratuities paid by customers *over and above* the posted Entertainment Fees, as well as stage tips, but not the mandatory Entertainment Fees you charge for personal performances – see number 4 below), although you will be required to pay 15 % of your tips into a "tip pool" that would be distributed to non-dancer regularly tipped employees. |
| 4. As an Independent Professional Entertainer, the Entertainment Fees you charge your customers <u>belong to you</u>, and are <u>yours to keep</u>, subject only to certain lease fees that you will be required to pay for having the right to use certain parts of the Club for your independent business activities. | 4. As an Employee, all of the Entertainment Fees you charge customers <u>belong to the Club</u>. You will have to turn them over to management before the end of your shift. |
| 5. As an Independent Professional Entertainer, you will be responsible for taking care of and paying all taxes and other withholdings due on your income. | 5. As an Employee, the Club will take out of your pay all taxes and other withholdings required by law. |
| 6. As an Independent Professional Entertainer, you keep track of your own income. You do not report your tip income to the Club (although the Club will be tracking the Entertainment Fees that you earn). You can take tax deductions for travel, advertising, makeup, costumes, props, tanning, health clubs, cosmetic surgery, etc., as allowed by law. | 6. As an Employee, you must, by law, report ALL of your tip income to the Club, and you are required to keep records of tips you pay out to other employees, including the names of the other employees who received tips from you. You cannot deduct from your taxes the incidental expenses of your employment except as permitted by law. In addition, the Club is required by law to pay to the IRS, out of the wages due to you, taxes owed on your tip income. If you make a substantial amount in tips, this could then result in you receiving a "zero" paycheck. If you have any questions about this, consult an accountant. |
| 7. As an Independent Professional Entertainer, you may perform wherever you choose, and may perform at other clubs while you are under contract with this Club. | 7. As an Employee, you will be prohibited from performing at other establishments that are in competition with the Club. |
| 8. As an Independent Professional Entertainer, you will determine the days and times you perform at the Club. In addition, you can perform as many hours per day as you desire, although you will receive no "overtime" pay from the Club. | 8. As an Employee, the Club will select your schedule (both days and times), with input from you. The final decision of your work schedule, however, will be made by Club management based upon consideration of its business needs, such as the expected number of entertainers and guests, etc. The Club will generally not permit you to work any "overtime." However, at the discretion of management you may be required to work overtime, and you will be paid time and one-half for any excess hours that you work as required by law. |
| 9. As an Independent Professional Entertainer, whether you take breaks, when you take your breaks, and the number and duration of any breaks, is totally up to you. The only restriction on your breaks is that you should not, obviously, take a break during your stage performances. | 9. As an Employee, Club management will determine the time, number and duration of your breaks, consistent with state law. |
| 10. As an Independent Professional Entertainer, you can perform for whomever you choose, and can reject any customers you want. | 10. As an Employee, you will be required to perform for all customers. |
| 11. As an Independent Professional Entertainer, you will never be required by the Club to give "free" dances to anyone. | 11. As an Employee, you may, at the direction of management, be required to give "free" dances to certain customers. |

12. As an Independent Professional Entertainer, you will never be required to engage in any Club promotions or advertising.

13. As an Independent Professional Entertainer, you will have the freedom to choose your own costumes, and you will be required to both provide and pay for them. However, you will be expected to appear in costuming consistent with industry standards for professional entertainers performing in upscale, high-end, entertainment facilities.

14. As an Independent Professional Entertainer, you will determine your own appearance.

15. As an Independent Professional Entertainer, you will not be given any training. You will be expected to come to the Club with the necessary skills to perform as a professional exotic dance entertainer. You may perform in any lawful manner of your own choosing and you will not have to meet any type of "performance standards" set by the Club.

16. As an Independent Professional Entertainer, if you are injured at the Club, you will <u>not</u> be covered by the Club's Workers' Compensation Insurance, but you can sue the Club, if it is at fault, and your only limits of recovery are those that may be imposed by state law.

17. As an Independent Professional Entertainer, you will not be entitled to unemployment compensation benefits either if your contract expires or the Club terminates it early for any of the reasons listed in the lease.

18. As an Independent Professional Entertainer, the Club will not offer you any form of health insurance.

19. By selecting Independent Professional Entertainer status, you will be acknowledging that you understand that you are not entitled to benefits under the Fair Labor Standards Act (minimum wage and overtime laws, among other things), the National Labor Relations Act, the Equal Employment Opportunity Act, and other laws that protect employees.

---

12. As an Employee, you may, at the discretion of management, be required to participate in various Club promotions and advertising, both on and off the Club premises.

13. As an Employee, you will be required to wear the costumes selected by the Club, which will provide to you, free of charge, two costumes every two months and a pair of performance footwear every three months.

14. As an Employee, your appearance must comply with the Club standards. Management will tell you how to wear your hair, and how your makeup should look.

15. As an Employee, you will be required to undergo dancer training, you must perform consistent with the standards set in that training, and you will be expected to meet certain dance quota minimums in order to be able to keep your job.

16. As an Employee, if you are hurt at work, your sole recourse against the Club, under most circumstances, will be for "Worker's Compensation" benefits. You will not have to prove the Club was at fault, but you will be subject to the limits of that coverage.

17. As an Employee, if you are fired or laid off, you may be entitled – if you have worked a sufficient period of time and satisfied other legal requirements – to unemployment compensation benefits. These benefits are for a fixed period of time and are set by law.

18. As an Employee, if the Club is at any time required to offer certain of its employees health insurance and you qualify, you may, but need not, accept such health insurance so long as you agree to pay the policy premiums up to a maximum of 8% of your total household income (wages *and* tips).

19. As an Employee, you will be entitled to certain legal protections under the Fair Labor Standards Act, the National Labor Relations Act, the Equal Employment Opportunity Act, and other laws that protect employees. You can find out about your rights as an employee by going to, among other places, the websites at www.dol.gov/esa/whd/flsa and www.illinois.gov/idol/Pages/default.aspx, and/or by reviewing the employment law posters that are displayed in the Club (if you have any questions as to where they are located, please ask a manager and he or she will direct you to them). You may also be entitled, depending upon the amount of time you work, to other employee benefits. If you have any questions about this, ask a manager.

AFTER HAVING REVIEWED THE ABOVE INFORMATION AND HAVING CONSIDERED THESE MATTERS:

_AR_ **I desire to perform as an Independent Professional Entertainer**

In light of your selection to perform as an Independent Professional Entertainer, we want to be sure that you are aware of the significance of the choice you have made. Consequently, **DO NOT SIGN THIS DOCUMENT UNLESS YOU FULLY UNDERSTAND AND AGREE TO THE FOLLOWING STATEMENTS:**

> By selecting to perform at this Club as an Independent Professional Entertainer, I acknowledge and represent that I have been afforded the opportunity to work at the Club as an employee-entertainer. However, after careful consideration I have willingly and intentionally chosen NOT to do so. In fact, I specifically REJECT the offer of employment extended to me by the Club, and I DECLINE and REFUSE the opportunity to enter into the type of employment arrangement discussed here. I desire, instead, to perform as an Independent Professional Entertainer under the terms set out in this document. I have made this choice of my own free will, and no one has forced, coerced, or threatened me to make this selection.
>
> Accordingly, I hereby REJECT, DISAVOW, RENOUNCE and REPUDIATE, any and all benefits that employee status may provide to me and any and all obligations that it may impose upon me.

I further understand and agree that the Club will rely on the statements, acknowledgements, representations, and the choice, that I have made in this document.

_____ **I desire to work at the Club as an Employee entertainer**


_Alexis_ (signature)
Entertainer's Signature

_Alexis Ramsey_
Entertainer's name (please print)

Dated: _2-25-19_

Page 4 of 4(Polekatz.Rev.02/08/2018)

## EXHIBIT A TO ENTERTAINMENT LEASE

### Rent Sheet

Pursuant to Paragraph 15 of the Entertainment Lease, the parties agree that **Entertainer** shall pay both "flat" and "additional" **Rent**. The flat **Rent** for each Show Date shall be in accordance with the following schedule:

### Monday through Friday

| | |
|---|---|
| Before 12:00 pm | $10.00 |
| 12:01 pm to 2:00 pm | $20.00 |
| 2:01 pm to 7:00 pm | $35.00 |
| 7:01 pm to 9:00 pm | $50.00 |
| After 9:00 pm | $75.00 |

### Saturday and Sunday

| | |
|---|---|
| Before 5:00 pm | $10.00 |
| 5:01 pm to 7:00 pm | $35.00 |
| 7:01 pm to 9:00 pm | $50.00 |
| After 9:00 pm | $75.00 |

Flat **Rent** for each **Show Date** shall be determined at the time **Entertainer** checks in with the DJ and is ready to begin her **Show Date** on the floor.

**Entertainer** shall also pay additional **Rent** in the amount of $0.00 for each personal entertainment performance in which she engages.

(PK.Rev.02.06.2018)     Date: 2-25-19     Initials: _____

