United States District Court
Southern District of Texas
**ENTERED**
March 01, 2022
Nathan Ochsner, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| KARYN JOHNSON, aka KITTY/MILLI, *et al.*, | § § § § | |
| Plaintiffs, VS. | § § § | CIVIL ACTION NO. 4:20-CV-663 |
| HOUSTON KP, LLC D/B/A POLEKATZ HOUSTON F/K/A SCORES, *et al.*, | § § § § | |
| Defendants. | § | |

## ORDER

Pending before the Court is Plaintiffs' Karyn Johnson ("Johnson"), Lorenza Lombana ("Lombana") and Danielle Gutierrez ("Gutierrez") (collectively "Plaintiffs") Motion for Partial Summary Judgment. (Doc. No. 43). Defendants Houston KP, LLC d/b/a Polekatz Houston f/k/a Scores ("Polekatz"), Houston KP Manager, LLC ("KP Manager"), Sanad Ibrahim ("Ibrahim"), and Anthony Quaranta ("Quaranta") (collectively "Defendants") filed a Response in opposition, (Doc. No. 45), Plaintiffs filed a Reply in support, (Doc. No. 48), and Defendants filed a Sur-Reply. (Doc. No. 60)[1].

Also pending before the Court is Defendants' Motion to Dismiss seeking to compel arbitration. (Doc. No. 61). Plaintiffs filed a Response in opposition, (Doc. No. 65), and Defendants

---

[1] Defendants' Sur-Reply was untimely filed and was filed without asking the Court for leave to do so. Furthermore, Plaintiffs filed a motion to strike (Doc. No. 62), to which Defendant's never responded. The Court grants the motion to strike pursuant to Local Rule 7.4 that states the "[f]ailure to respond to a motion will be taken as a representation of no opposition." The Court notes, however, that even if the Sur-Reply had been considered, the Court's holding would not be different.

1

filed a Reply in support. (Doc. No. 66). After reviewing the briefing and the applicable law, the Court grants both Plaintiffs' Motion for Summary Judgement and Defendants' Motion to Dismiss.

## I. Background

This case arises out of a wage dispute. Defendants operate an adult-oriented club featuring exotic dancers. The dancers' primary duties at the club were to dance and to entertain customers. Dancers often performed on stages or tables, but occasionally dancers performed in "VIP rooms" for customers. In many cases, the dancers performed while nude or semi-nude.

The business relationship appears to be as follows. The dancers were not paid by Defendants, but instead were paid by customer tips. Defendants, however, set prices for all VIP performances. Plaintiffs were expected to share their tips with Defendants and other non-dancer employees of the club who did not customarily receive tips. If Plaintiffs did not arrive on time for their shift, Defendants charged them a late fee. Defendants also maintained the ability to suspend, fine, or fire the dancers for failure to comply with the club's rules.

Defendants maintained control of the club's premises and were responsible for providing and funding all advertising and marketing of the club. Defendants employed a DJ who played music for the dancers to assist in their performance. They also dictated the schedule of the dancers' performances.

At least one Plaintiff began working as a dancer at for Defendants in 2012, with some of the Plaintiffs performing until approximately March 2020. In February 2020, Plaintiffs brought this action against Defendant Polekatz and its owners/managers—Defendants Ibrahim and Quaranta—alleging a violation of the Fair Labor Standards Act ("FLSA") tipped-employee compensation provision. 29 U.S.C. § 203(m).

Plaintiffs have now filed a Motion for Partial Summary Judgment, arguing that "Plaintiffs were misclassified as independent contractors when they were in fact employees at Defendants' club." (Doc. No. 43).

## II.     Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the Court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

## III.     Analysis

Plaintiffs' Motion presents a single question to the Court: Were Plaintiffs, as dancers at Defendants' club, entitled to the protections of the FLSA as employees? The Fifth Circuit has long held, even in situations with contradictory facts, that whether a worker is an employee for the

3

purposes of the FLSA is a question of law to be decided by the Court. *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1045 (5th Cir. 1987) ("The ultimate finding as to employee status is not simply a factual inference drawn from historical facts, but more accurately is a legal conclusion based on factual inferences drawn from historical facts.").

The FLSA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). "The FLSA requires 'employers' to pay their employees a minimum wage." *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012) (citing 29 U.S.C. § 206(a)). Consequently, to find protection under the FLSA, Plaintiffs must demonstrate that they were in an employer-employee relationship with Defendants.

Employee status under the FLSA is determined by "focus[ing] on whether the alleged employee, as a matter of economic reality, is economically dependent upon the business to which she renders her services." *Reich v. Circle C. Invests., Inc.*, 998 F.2d 324, 327 (5th Cir. 1993). This is known as the "economic reality" test. *Powers*, 673 F.3d at 354. In applying this test, courts analyze five factors: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. *See Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379 (5th Cir. 2019); *see also Reich*, 998 F.2d at 327. "These factors are merely aids in determining the underlying question of dependency, and no single factor is dispositive." *Reich*, 998 F.3d at 327. The Court may also weigh a sixth factor: whether the worker's services are "an integral part" of the alleged employer's business. *Hobbs v. Petroplex Pipe & Constr. Inc.*, 946 F.3d 824, 836 (5th Cir. 2020).

The parties have briefed each of the six factors. The Court will address each factor in turn.

1. Factor 1: Degree of Control

"Control is only significant when it shows an individual exerts such a control over a meaningful part of the business that [the individual] stands as a separate economic entity." *Usery v. Pilgrim Equip. Co. Inc.*, 527 F.2d 1308, 1312–13 (5th Cir. 1976). "This means we determine whether the worker has a 'viable economic status that can be traded to other . . . companies', keeping in mind that 'lack of supervision [of the individual] over minor regular tasks cannot be bootstrapped into the appearance of real independence.'" *Parrish*, 917 F.3d at 381 (quoting *Usery*, 327 F.2d at 1312). "It is not significant how one 'could have' acted under the contract terms." *Usery*, 327 F.3d at 1312.

Plaintiffs, supported by their own deposition testimony, argue that Defendants maintained a significant degree of control over them in the form of setting policies and procedures at Polekatz, only allowing dancers to work during operating hours, requiring dancers to pay a "house fee," all while maintaining the ability to terminate dancers at any time. (Doc. No. 43 at 14–15) (citing Docs. No. 43-5, 43-6, 43-7, 43-9, 43-10). Furthermore, Plaintiffs argue that Defendants required dancers to "sign in" and "sign out" when beginning and ending a shift, required them to dance when the DJ called their names, and monitored the number of dances each performed. (*Id.*). Plaintiffs also argue that they were expected to pay a "tip-out" fee to other workers at Polekatz from the tips they made from customers. (*Id.*). Finally, Plaintiffs argue that Defendants set the prices and duration of the dances performed, and that Defendants controlled the customers that could enter the club. (*Id.*).

Defendants respond, raising seven arguments. First, Defendants dispute the claim that they controlled Plaintiffs' work schedules, arguing instead that the dancers were able to come and go at will, as well as set their own schedule. (*See* Deposition of Mustafa, Doc. No. 45-1; Deposition of Ibrahim, Doc. No. 45-2; Deposition of Plaintiff Gutierrez, Doc. No. 45-3). Additionally,

5

Plaintiffs Lombana and Gutierrez testified that Defendants did not specifically require that dancers work a minimum number of hours per week. (*See* Deposition of Gutierrez, Doc. No. 45-3; Deposition of Lombana, Doc No. 45-4).

Second, dancers at Polekatz were allowed to choose their own wardrobe so long as it complied with city ordinances, whereas other workers were required to wear a uniform. (*See* Docs. No. 45-1, 45-2, 45-3).

Third, dancers were able to select which customers they danced for and could charge above the minimum price if they chose to do so. (*See* Docs. 45-6, 45-7, 45-8).

Fourth, dancers were able to request songs for the DJ to play while they were onstage and were able to opt out of the dance rotation without fine or reprimand. (*See* Doc. No. 45-1).

Fifth, dancers had no "tip-out rules," but instead, any tipping of Polekatz employees by the dancers was voluntary, not a requirement of the club. (*See* Docs. No. 45-1, 45-2).

Sixth, while dancers were required to pay a "house fee," if they could not afford the house fee, Defendants sought to work with the dancers in order to allow them to continue to perform. (*See* Docs. No. 45-1, 45-2).

Finally, dancers were able to have other jobs, including at other "Gentleman's Clubs," while working at Polekatz. (*See* Affidavit of Anthony Quaranta, Doc. No. 45-9).

The Court finds that this factor is favors Plaintiffs being classified as employees. While it appears clear that Plaintiffs enjoyed certain freedoms while working at Polekatz, the degree of control exerted by Defendants reflects that frequently associated with an "employer-employee" relationship.

2. <u>Factor 2: Extent of Relative Investment</u>

Plaintiffs argue that a dancer's investment is significantly less than Defendants' relative investment. Plaintiffs contend that their investment was limited to "their own makeup and performance attire." (Doc. No. 43) (citing Docs. No. 43-6, 43-7, 43-8). Conversely, Defendants' investment included advertising, monthly rent for the premises, alcohol, insurance, and other supplies. Defendants argue that the dancers return on investment was greater than theirs, but cite to no evidence to support this.

The Court finds that the evidence demonstrates that this factor weighs in favor of Plaintiffs being employees.

3. <u>Factor 3: Opportunity for Profit/Loss Determined by Defendants</u>

Plaintiffs argue that Defendants were in control of their opportunity for profit or loss because Defendants (1) controlled which customers could enter the club; (2) the location and operating hours of the club; (3) the advertising for the club; and (4) the prices that dancers could charge customers for dances. (Doc. No. 43 at 16) (citing Docs. No. 43-9, 43-10). Plaintiffs argue that as a result of Defendants controlling Polekatz's operation, they were in primary control over Plaintiffs' opportunity to earn a profit.

Conversely, Defendants contend that their depositions make clear that the dancers were free to come and go as they pleased, working whenever they wanted, without any restriction preventing them from working at other clubs. (Doc. No. 45 at 12) (citing Docs. No. 45-1, 45-2). Furthermore, Defendants argue that while they controlled Polekatz's advertising, Polekatz did not use dancers' pictures absent their consent, and that the dancers were free to advertise their services in any way they chose, including social media. (*See* Doc. No. 45-1). Finally, according to the

deposition of Defendant Quaranta, dancers were free to upcharge customers for dances beyond the minimum price provided by Polekatz. (*See* Doc. No. 45-8 at 4).

The Court finds that this factor weighs in favor of Plaintiffs being employees. Defendants maintained control over how Polekatz advertised its services, including which nights or events were promoted. Defendants set minimum price restrictions on Plaintiffs, preventing them from freely negotiating rates for their services. Defendants additionally controlled the quality of the facilities, which are likely to have an impact on the volume and type of customer. Taken together, the facts suggest that Defendants had a great effect on the opportunity for Plaintiffs to gain a profit or suffer a loss.

### 4. Factor 4: Skill and Initiative Required as a Dancer

When evaluating this factor, the Court considers whether plaintiffs have "some unique skill set, or some ability to exercise significant initiative within the business." *Hopkins v. Cornerstone America*, 545 F.3d 338, 343 (5th Cir. 2008). "Greater skill and more demonstrate initiative counsel in favor of [independent contractor] status." *Parrish*, 917 F.3d at 385.

Plaintiffs contend that no special skills required to dance at Polekatz. In support, Plaintiffs point out that Defendants did not require them to audition to be a dancer, but instead, only required that they put on "dance attire." (*See* Docs. No. 43-7, 43-8). If approved, Defendants simply required them to submit the necessary form of identification and fill out the required paperwork. *Id.* Plaintiffs also point to Defendant Mustafa's testimony which generally corroborates the above-described application process. (*See* Doc. No. 43-9).

Defendants respond that being a Polekatz dancer does require special skills. (*See* Doc. No. 45-8). Quaranta maintained that while most of the dancers have not been formally trained, they often have experience working in the business. (*Id.*). Defendants argue, based primarily on

8

Quaranta's testimony, that the skills and initiative required include (1) showing up to work, (2) picking and choosing which customers to perform for, and (3) determine whether they should upcharge a customer. (*Id.*).

The Court finds that this factor supports a finding that Plaintiffs are employees rather than independent contractors. While the Court notes that many personalities have noted that showing up is half the battle, the Court does not find this to be a unique job skill.[2] It can hardly be argued that Defendants are able to discern any special skills or initiative given the application process used to hire dancers. Moreover, none of the "skills" suggested by Defendants fall within the umbrella of this factor. *See Reich*, 998 F.2d at 328 ("[T]he ability to develop and maintain rapport with customers is not the type of 'initiative' contemplated by this factor. . . . The dancers do not exhibit the skill or initiative indicative of persons in business for themselves."). This factor clearly favors an employer-employee relationship.

### 5. Factor 5: Permanency of Relationship

When evaluating the "permanency of relationship," the Fifth Circuit has provided several considerations, including (1) whether a plaintiff "worked exclusively" for defendant, (2) the total length of relationship between the plaintiff and defendant, and (3) whether the work was on a "project-by-project basis." *Parrish*, 917 F.3d at 387. Importantly, whether the plaintiff "*could have*" worked for other clubs is not a relevant concern, because the analysis is focused on economic reality, not hypotheticals. *Id.* (emphasis in original).

---

[2] Some people attribute the saying that "showing up is half the battle" to Stephen Hawking. *See* Charles Christian, *Just Showing Up*, LONGVIEW NEWS-JOURNAL (Jan. 21, 2022), https://www.news-journal.com/just-showing-up/article_054eba41-3b07-52fd-8c90-1eac8f64384f.html. Others prefer Woody Allen's quote that "eighty percent of success is showing up." Marilyn M. Machlowitz, *Eighty Percent of Life is Showing Up*, HUFFPOST (May 15, 2008, 1:39 PM), https://www.huffpost.com/entry/eighty-percent-of-life-is_b_101778.

9

Prior to this lawsuit being filed, Plaintiff Johnson worked for Defendants for over eight years. (*See* Doc. No. 43-6). Plaintiffs Gutierrez and Lombana each worked for approximately three months. (*See* Docs. No. 43-7, 43-8). There is no evidence in the record to suggest that any of the Plaintiffs worked for any other clubs while working for Defendants, nor is there any evidence that the Plaintiffs worked on a "project-by-project basis." Rather, Plaintiffs were engaged in what appeared to be an "at-will" relationship, with each party having the ability to terminate the relationship at any time.

Upon review of the evidence, the Court finds that this factor is neutral. The facts demonstrate what appears to be an "at-will" employment relationship; the fact that Plaintiffs were not prohibited from working elsewhere is not necessarily indicative of independent contractor status, because the Court has no evidence to suggest that Plaintiffs actually did work elsewhere. Alternatively, however, there is significant variation in each Plaintiff's tenure at Polekatz. As such, the Court finds that this factor favors neither party.

6. <u>Factor 6: Whether Dancers Are Integral to Defendants' Business</u>

Plaintiffs argue that, as dancers at Polekatz, they were an integral part of Defendants business. Specifically, Plaintiffs contend that in a previous case, Defendants described Polekatz's clientele, stating:

> The typical customer is an adult male who seeks sexually-oriented entertainment from watching live female sexually-oriented dancing in bars or clubs offering alcoholic beverages. . . . Within the broader market of live adult entertainment is a relevant product submarket for live adult entertainment which includes topless dancing. . . . When offered the choice, consumers will routinely select live adult entertainment offering close topless dancing over live adult entertainment that does not, meaning that clubs offering such dancing attract more customers at a higher price.

(Doc. No. 43-2 at 10).[3] As such, Plaintiffs argue that they provide a service that is integral to Defendants' business, and thus, they should be categorized as Defendants' employees.

Defendants, again pointing to Mustafa's deposition, argue that Polekatz's primary source of profit is a result of advertising for specials such as promoting television UFC fights at the club. (Doc. No. 45-1. While Defendants point to other services or profit-generating events, they point to no evidence suggesting that dancers do not provide integral services to their business model. As such, the Court finds that this factor weighs in favor of Plaintiffs being employees.

Noting the "totality of the circumstances" nature of the analysis, the Court finds that Plaintiffs are employees rather than independent contractors. While there remains some question as to the degree of control Defendants exhibited over the dancers, the remaining factors all land in Plaintiffs' favor. In sum, the factors, taken together and based on an analysis of the factual record, demonstrate that Plaintiffs should be considered "employees" rather than independent contractors.

### IV.   Contractual Designations and Agreements to Arbitrate

The Court has struck the Sur-Reply. Nevertheless, it notes that Defendants argue that summary judgment is premature because, since Plaintiffs' Motion was filed, multiple Plaintiffs' have opted into the lawsuit. (Doc. No. 60 at 5). Defendants allege that, at the time the Sur-Reply was filed, 20 of the class plaintiffs had signed an "Entertainer Application" which specified that they agreed to work as an independent contractor rather than an employee. (*See* Docs. No. 60, Ex.

---

[3] Third Amended Complaint in *Houston KP, LLC v. City of Houston*, No. 4:14-CV-02928 (S.D. Tex. Sept. 18, 2015).

A-S). Even if the Court considered the Sur-Reply, the Court is not persuaded to change its ruling. The Fifth Circuit has made clear that, even when individuals "contractually agreed to be, and actually believed themselves to be, independent contractors . . . '[s]ubjective beliefs cannot transmogrify objective economic realities. A person's subjective opinion that he is a businessman rather than an employee does not change his status.'" *Hopkins v. Cornerstone America*, 545 F.3d 338 (5th Cir. 2009) (quoting *Mr. W Fireworks*, 814 F.2d at 1049); *see also Bally v. Dreams Cabaret, LLC*, No. 17-cv-30, 2018 WL 456029, at *3 (W.D. Tex. Jan. 16, 2018) ("The contractual designation of a worker as an independent contractor is not necessarily controlling."). Upon review of the factors, the Court has determined that as a matter of economic reality, Plaintiffs were employees rather than independent contractors; therefore, they are entitled to wages in accordance with the terms of the FLSA.

Defendants have filed a motion to dismiss arguing that several plaintiffs also signed an arbitration agreement. (Doc. No. 61). While the contractual designations are not controlling, the arbitration agreements are. In light of their contractual provisions, the claims of the following Plaintiffs are dismissed in favor of arbitration: Mariah Carpenter, Jasmine Thomas, Christina Vital, Sydne Holloway, Madeline Rush, Carolyn Simon, Brittney Hailey, Samantha Avie, Heather Masterpool, Alexis Ramsey, Kaycie Newman, Victoria Manriquez, Angela Gabbard, Kitira Dikeman, Simone Galloway, Jazmine Mohamed, Rici Rachel, Aleisa Pena, Breann Oneal, Tatiana Vasquez, Polina White, and Amayja Session. Pursuant to the stipulations of the Defendants that the arbitrations are to be held in Houston, the Court orders that arbitration take place in Houston. (*See* Doc. No. 66). The Court's holding that Plaintiffs are employees rather than independent contractors is limited to those plaintiffs that have not signed an arbitration agreement.

## V. Conclusion

For the foregoing reasons, the Court grants Plaintiffs' Motion for Partial Summary Judgment, finding that Plaintiffs were misclassified as independent contractors. (Doc. No. 43). Furthermore, the Court grants Defendants' Motion to Dismiss with respect to those plaintiffs that have signed an arbitration agreement. (Doc. No. 61).

Signed at Houston, Texas, this 1st day of March, 2022.

Andrew S. Hanen
United States District Judge